IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| GUY M. DIFRANCESCO | Chapter: 7 |
| | Case Number: 5:19-bk-00201-RNO |
| Debtor(s) | |
| GUY M. DIFRANCESCO | Adversary Number: 5:19-ap-00008-RNO |
| Plaintiff(s) | |
| v. | Document No.: 1 |
| U.S. DEPARTMENT OF EDUCATION and EDUCATIONAL CREDIT MANAGEMENT CORPORATION | Nature of Proceeding: Adversary Complaint |
| Defendant(s) | |

**OPINION[1]**

Debtor filed an Adversary Complaint seeking to discharge his student loans alleging they posed an undue hardship. The United States Department of Education and the Educational Credit Management Corporation timely filed answers. For the reasons stated below, I will enter judgment for Defendants.

I. **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

II. **FACTS AND PROCEDURAL HISTORY**

Guy M. DiFrancesco ("Debtor") is a healthy, forty-year-old male currently living with his seventy-six-year-old mother, Barbara DiFranceso, at her home in Larksville, Pennsylvania.

---

[1] Drafted with the assistance of Timothy R. Powell, Esq., Law Clerk.

1

Debtor began pursuing a bachelor's degree in political science in 1998 at Luzerne County Community College, which degree he eventually obtained from Bloomsburg University of Pennsylvania in 2005. Subsequently, Debtor enrolled at East Stroudsburg University where he obtained his master's degree in American politics in 2008. Later that same year, Debtor enrolled at both Marywood University, where he pursued a PhD in human development, and King's College, where he pursued a teaching degree. However, Debtor dropped out of both programs prior to completion when he chose to provide 24/7 care to his mother who suffered a debilitating stroke in 2010. From 1998 to 2010, Debtor received multiple student loans ("Loans") from the United States Department of Education and the Pennsylvania Higher Education Assistance Agency ("PHEAA").[2] As of the date of this Opinion, Debtor has failed to make a single payment on any of his Loans[3] which now collectively total more than $200,000.[4]

On January 17, 2019, Debtor, acting *pro se*, filed his voluntary Chapter 7 Bankruptcy Petition. He obtained a general Chapter 7 discharge on May 6, 2019. Discharge Order, 5:19-bk-00201-RNO, ECF No. 33. The discharge order provides some examples of debts that are not discharged. One example is, "debts for most student loans."

On January 24, 2019, Debtor commenced this Adversary Proceeding by filing a Complaint ("Complaint") against the United States Department of Education seeking a discharge of his Loans. Following a *nunc pro tunc* motion to extend time to file an answer, which I granted, the United States Department of Education filed its answer on March 8, 2019.

---

[2] Some of Debtor's student loans were originally provided by Wachovia Education Finance. United States Department of Education Stipulation of Facts at ¶ 12, ECF No. 27. However, these loans were guaranteed by PHEAA and also reinsured by the United States Department of Education. *Id.* at ¶ 13. After Debtor defaulted on these loans, the right and title to the loans ultimately landed in the hands of the United States Department of Education. *Id.* at ¶¶ 14-17.

[3] Trial Tr. at 35, ECF No. 35.

[4] Compl. at 3, ECF No. 1; Trial Tr. at 16, ECF No. 35; United States Department of Education Trial Ex. 11 at 7.

2

Additionally, PHEAA timely filed its answer on February 25, 2019. Nonetheless, PHEAA does not appear on the case caption because, on March 21, 2019, the Educational Credit Management Corporation ("ECMC") filed a Motion to Intervene ("Motion") on the grounds that PHEAA had assigned its right, title, and interest in Debtor's Loans to ECMC.[5] I granted the Motion on March 22, 2019. Subsequently, ECMC filed its answer on April 5, 2019.

A Trial was ultimately held on October 4, 2019 ("Trial"). Both Debtor and ECMC timely filed post-trial briefs.[6] The Complaint is now ripe for decision.

### III. DISCUSSION

Debtor's Complaint requests I discharge his student loans arguing that repaying them places an undue hardship on him.[7] Both ECMC and the United States Department of Education argue that, at the very least, Debtor cannot satisfy the third prong of the Third Circuit's undue hardship test which governs whether a Debtor can discharge his student loans pursuant to 11 U.S.C. § 523(a)(8).[8]

Section 523(a)(8) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> \* \* \*
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental

---

[5] PHEAA assigned Debtor's Loans to ECMC on or about March 2, 2019. Additionally, PHEAA was not present at the Trial.

[6] The United States Department of Education filed a pre-trial brief. *See* United States Department of Education Pre-Trial Br., ECF No. 30.

[7] Debtor is not contesting the validity of the Loans, the amounts claimed due and owing, or that ECMC is PHEAA's assignee. ECMC Post-Trial Br. at 3, ECF No. 34.

[8] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

3

> unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;
>
> * * *

"Section 523(a)(8) protects four categories of educational loans from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a government unit or nonprofit institution; (3) loans received as an educational benefit, scholarship, or stipend; and (4) any 'qualified educational loan' as that term is defined in the Internal Revenue Code." *In re Rumer*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012) (citation omitted). If a debt falls within the scope § 523(a)(8), the debt is nondischargeable unless the debtor establishes that excepting the debt from discharge would "impose an 'undue hardship' on the debtor or the debtor's dependents." *Id.* at 560. A creditor has the initial burden to establish that the debt falls within § 523(a)(8).[9] *Id.* at 561 (citations omitted). If the creditor meets that burden, the debtor then bears the burden of proving an undue hardship. *In re Faish*, 72 F.3d 298, 301 (3d Cir. 1995) (citations omitted).

In 1995, the Third Circuit adopted the *Brunner* "undue hardship" standard to determine whether student loan debt can be discharged pursuant to § 523(a)(8). *In re Faish*, 72 F.3d at 307. According to the *Brunner* test, student loan debt may be discharged pursuant to § 523(a)(8) only if three conditions are met:

---

[9] In our case, no party disputes whether the Loans fall within the purview of § 523(a)(8).

4

Case 5:19-ap-00008-RNO    Doc 36    Filed 11/06/19    Entered 11/06/19 15:25:51    Desc
Main Document    Page 4 of 11

1. The debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
2. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
3. The debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *see also In re Faish*, 72 F.3d at 304-05. All three prongs of the test must be established by a preponderance of the evidence for a discharge to be obtained. *In re Faish*, 72 F.3d at 306. This standard is high and difficult to meet. *In re Armstrong*, 394 B.R. 43, 51 (Bankr. M.D. Pa. 2008). If any one of the three prongs are not met, the student loan(s) cannot be discharged. *In re Faish*, 72 F.3d at 306 (citation omitted). "Moreover, this test must be strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue hardship.'" *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001) (citing *In re Faish*, 72 F.3d at 306). Because Debtor cannot satisfy the third prong of the *Brunner* test, I will begin and end my inquiry there.

As stated above, the third prong of the *Brunner* test requires the debtor to establish that he made a good faith effort to repay his loans from the date on which the first loan payment became due to the date on which the debtor filed for bankruptcy. *Pelliccia v. U.S. Dep't of Educ.*, 67 F. App'x 88, 90 (3d Cir. 2003) (non-precedential opinion). In determining good faith in this context, a court must consider "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy." *Id.* at 91.

First, it is clear that Debtor went to commendable lengths to minimize his expenses. Debtor testified that he has had no income from 2010 to present and that he pays all of his and

5

his mother's expenses with her social security benefits of a little more than $15,000 a year. Trial Tr. at 17-19, ECF No. 35. To name a few, these expenses include food, little to no entertainment, heating, water, telephone, and roughly $4,000 a year on county/municipal and school property taxes. *Id.* at 18-19; ECMC Trial Ex. 3 at 11. Additionally, to keep his expenses down, Debtor does not own his own car or his own home, and he attempts to perform all repairs on his mother's car and her house. Trial Tr. at 18-19, ECF No. 35. Furthermore, based upon his schedules, his testimony, and his answers to interrogatories, Debtor appears to live modestly without incurring substantial expenses beyond those required to pay for basic necessities. Therefore, this weighs in favor of a finding that Debtor made a good faith effort to repay his Loans.

Second, and more persuasively, it is also clear that Debtor did not make sufficient efforts to restructure his Loans for me to find that he satisfied his burden under the third prong of the *Brunner* test. Specifically, it is uncontested that Debtor did not make a single payment on his Loans during the subject time period. Additionally, he did not maximize his earning potential by seeking employment of any kind; nor did he apply for an income-based repayment plan or income-contingent repayment plan. Further, the Loans account for almost all of the debt he is attempting to discharge in bankruptcy. Multiple courts in the Third Circuit have found a lack of good faith under the third prong of the *Brunner* test based upon similar actions. *See In re Davis*, 526 B.R. 136, 141-42 (Bankr. W.D. Pa. 2015); *In re Lepre*, 466 B.R. 727, 736 (Bankr. W.D. Pa. 2012); *In re Jones*, 392 B.R. 116, 130-31 (Bankr. E.D. Pa. 2008); *In re Sperazza*, 366 B.R. 397, 412-14 (Bankr. E.D. Pa. 2007).

Debtor does not dispute that he has not made a single payment on his Loans. United States Department of Education Stipulation of Facts at ¶¶ 10, 18, 23, & 25, ECF No. 27; ECMC

6

Post-Trial Br. at 3, ECF No. 34. While neither ECMC nor the United States Department of Education asked him why not, I infer the reason is that Debtor could not do so without his own stream of income and while living solely off his mother's social security benefits. Regardless, this fact alone weighs heavily against me finding that Debtor made good faith efforts to repay his Loans.

Additionally, I find that Debtor has not maximized his earning potential. Debtor was last employment in either 2009 or 2010, when he worked for an auto parts company for about a week before quitting for an unspecified reason.[10] Trial Tr. at 11, ECF No. 35. Since taking over as fulltime caregiver for his mother in 2010, Debtor has not actively sought out or obtained any form of employment. *Id.* at 11 & 24-25. When asked why he had not sought specific employment opportunities that would allow him to work from home or to telecommute, Debtor testified that he didn't believe the online opportunities he came across were legitimate and that he believed it would be too difficult to hold any job while providing 24/7 care to his mother. *Id.* at 24-25. In his post-trial brief, Debtor also stated that he "finds no job beneath him," but that it would be "impossible" for him to take any job with the weight of his Loans on his back. Debtor Post-Trial Br. at 4, ECF No. 33.

An additional factor courts take into account under the good faith prong of the *Brunner* test is "that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *In re Faish*, 72 F.3d 298, 305 (3d Cir. 1995) (internal quotations and citations omitted). While Debtor's mother's stroke and her need for 24/7 care were clearly beyond Debtor's reasonable control, his decision to not actively seek any form of employment since 2010 was well within his reasonable control. Debtor

---

[10] It should be noted that this employment occurred before his mother's stroke. United States Department of Education Trial Ex. 11 at 4.

is a healthy, forty-year-old man with no disability who holds a bachelor's degree, a master's degree, and credits towards a PhD. Understanding his mother's daily care needs from Debtor's testimony and the record, this fails to establish that Debtor could not have found any employment opportunities in the last ten years. It is laudable that Debtor is caring for his mother. However, it is not a legal basis to discharge the Loans. Additionally, not finding employment due to the weight of having to repay his Loans is not a valid reason. Debtor has not maximized his earning potential, and his failure to make any payments on his Loans is due to his own willful inaction. These facts strongly weigh against a finding that Debtor made a good faith effort to repay his Loans.

Furthermore, while not dispositive, "[a] debtor's effort to seek out loan consolidation options that make the debt repayment obligation less onerous is an important component of the 'good faith repayment' inquiry." *In re Kuznicki*, 483 B.R. 296, 302 (W.D. Pa. 2012) (citing *In re Fabrizio*, 369 B.R. 238, 245 (Bankr. W.D. Pa. 2007)). Such an effort can support a finding that Debtor takes his loan obligations and their ultimate repayment seriously. *Id.* Here, Debtor testified that he inquired into applying for an income-based repayment plan or an income-contingent repayment plan but that he never submitted an application because he could only avail himself to such an option once during the life of the loan. Trial Tr. at 20-23, ECF No. 35; *see also* ECMC Stipulation of Facts at 4, ECF No. 28. Debtor also testified about being concerned about his ultimate tax burden at the end of the twenty-five-year repayment period. Trial Tr. at 22-23, ECF No. 35. Nonetheless, even though Debtor did not apply for an income-driven repayment plan or an income-contingent repayment plan, I will refrain from factoring this into my determination because: (1) the record does show that Debtor inquired into doing so; and (2) Debtor ultimately did not file an application due to his sincere belief that his situation would not

8

improve and participation in such a plan would be futile. *In re Crawley*, 460 B.R. 421, 444-45 (Bankr. E.D. Pa. 2011) ("To reach a fair and just result, the court's consideration of the significance, if any, of the debtor's failure to participate in the ICRP must be tailored based on the individualized circumstances of the debtor who is before the court.").

Finally, when evaluating good faith in this context, courts have analyzed the ratio of a debtor's student loan debt to the total debt to be discharged. *In re Fabrizio*, 369 B.R. at 247 (citations omitted); *Goforth v. U.S. Dep't of Educ.*, 466 B.R. 328, 341 (Bankr. W.D. Pa. 2012); *In re Murphy*, 535 B.R. 97, 107 (Bankr. W.D. Pa. 2015). "Where the student loan debt constitutes the majority of the debt, it is an indication that discharging the student loan debt was the primary motivating factor in filing for relief under the Bankruptcy Code." *In re Murphy*, 535 B.R. at 107 (citation omitted). Debtor's Schedules reflect that his Loans account for roughly 99% of his total debt. ECMC Post-Trial Br. at 6-7, ECF No. 34. Additionally, Debtor testified that his main purpose in filing for bankruptcy was to discharge his Loans. Trial Tr. at 12-13, ECF No. 35; see also Debtor Post-Trial Br. at 6, ECF No. 33. While not dispositive, such a high ratio and Debtor's purpose in filing bankruptcy weigh against me finding that Debtor made a good faith effort to repay his Loans.

In his closing argument and post-trial brief, Debtor cites *In re Hurley* as authority to discharge the Loans. *In re Hurley* is a Chapter 7 bankruptcy case in the Ninth Circuit where the debtor filed an adversary proceeding seeking to discharge his student loan debt. 601 B.R. 529, 532 (B.A.P. 9th Cir. 2019). The bankruptcy court granted the defendants' motion for summary judgment holding that the debtor could not have been found to have satisfied the good faith prong of the *Brunner* test, and the Appellate Panel of the Ninth Circuit affirmed. *Id.* at 533 &

9

537. Specifically, the bankruptcy court found that the debtor's past criminal conduct outweighed the debtor's good faith efforts to repay his student loans. *Id.*

In our case, Debtor argued that if the *Hurley* court could hold that bad acts outweighed good faith efforts to repay student loans, then the reverse should hold true as well (i.e., that good acts could outweigh a lack of good faith in repaying student loans). Debtor Post-Trial Br. at 8, ECF No. 33; Trial Tr. at 47-49, ECF No. 35. While I admire Debtor's commitment to care for his mother and commend him on presenting such a creative legal argument, I have found no caselaw which supports his assertion. In fact, the *Hurley* court incorporates the debtor's bad faith criminal conduct in its analysis of whether a debtor willfully caused his own default. *In re Hurley*, 601 B.R. at 535-36. Also, *Hurley* dealt with a debtor who consistently made payments on his loans, enrolled in an income-based repayment plan, and actively sought employment. In our case, Debtor did not satisfy any of these good faith efforts, and I have already found that his failure to repay the Loans and maximize his income is predicated on his own willful inaction. As noted above, the Third Circuit has held that equitable concerns and other extraneous factors are not part of the undue hardship test. *In re Brightful*, 267 F.3d at 328.

After reviewing the testimony and the evidence of record, I conclude that Debtor has failed to satisfy his burden on the good faith prong of the *Brunner* test. *See In re Jones*, 392 B.R. 116, 130-31 (Bankr. E.D. Pa. 2008) (finding that the debtor failed the good faith prong of the *Brunner* test even though he maintained relatively modest expenses); *In re Sperazza*, 366 B.R. 397, 413 (Bankr. E.D. Pa. 2007) (finding that the debtor failed the good faith prong of the *Brunner* test even though he had not incurred any substantial expenses beyond those required to pay for basic necessities). Since the *Brunner* test requires all three factors to be independently proven for the Loans to be discharged, I will deny the relief requested in the Complaint.

## IV. CONCLUSION

Debtor has not demonstrated by a preponderance of the evidence that repaying his Loans imposes an undue hardship upon him pursuant to § 523(a)(8). Debtor's Complaint is dismissed. Judgment will be entered consistent with this Opinion.

By the Court,

Robert N. Opel, II, Chief Bankruptcy Judge
(BI)

November 6, 2019